# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **NANCY ELDRIDGE COLLINS,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv00014 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Nancy Eldridge Collins, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2009). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Collins filed her current applications for DIB and SSI on March 14, 2006, alleging disability as of January 1, 2005, due to carpel tunnel syndrome, arthritis, lower back pain, leg and feet pain, diabetes, chest pain, hypertension and overactive bladder . (Record, ("R."), at 109-11, 127, 386-89.) The claims were denied initially and upon reconsideration. (R. at 88-90, 94-95, 96, 97-99.) Collins then requested a hearing before an administrative law judge, ("ALJ"). (R. at 100.) The ALJ held a hearing on October 26, 2007, at which Collins was represented by counsel. (R. at 50-85.)

By decision dated November 5, 2007, the ALJ denied Collins's claims. (R. at 25-37.) The ALJ found that Collins met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2007. (R. at 27.) The ALJ also found that Collins had not engaged in substantial gainful activity since January 1, 2005, the alleged onset date. (R. at 27.) The ALJ determined that the medical evidence established that Collins suffered from severe impairments, namely obesity, diabetes mellitus, back and knee pain, mild carpal tunnel syndrome, high blood pressure, chest pain and overactive bladder, but she found that Collins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 27, 30.) The ALJ found that Collins had the

residual functional capacity to perform light work,[1] limited by an inability to perform more than occasional balancing, stooping, kneeling, crouching and crawling, that allowed her to sit and stand for brief postural changes throughout the day, that allowed good access to a bathroom for a couple of very brief bathroom breaks during the day and which did not require climbing, the performance of repetitive fine manipulation with her hands or lifting items overhead. (R. at 31.) Thus, the ALJ found that Collins was unable to perform her past relevant work as a cook and a sewing machine operator. (R. at 35.) Based on Collins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Collins could perform, including those of a hotel housekeeper, a domestic house worker and a laundry laborer at the light exertional level, as well as jobs as a teacher's aide and an addresser/office clerk at the sedentary level of exertion. (R. at 35-36.) Thus, the ALJ found that Collins was not under a disability as defined under the Act, and was not eligible for benefits. (R. at 37.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2009).

After the ALJ issued her decision, Collins pursued her administrative appeals, (R. at 13), but the Appeals Council denied her request for review. (R. at 6-10.) Collins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2009). The case is before this court on Collins's motion for summary judgment filed September 2, 2009, and the Commissioner's motion for summary judgment filed October 8, 2009.

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2009).

*II. Facts*

Collins was born in 1958, (R. at 109, 386), which, at the time of the ALJ's decision, classified her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Collins has a high school education and some college education. (R. at 57, 132.) Collins has past relevant work as a cook and a sewing machine operator. (R. at 128, 134.) Collins stated that she quit work in February 2003 to home school her son, who had developmental delays and mild cerebral palsy. (R. at 55.)

James Williams, a vocational expert, also was present and testified at Collins's hearing. (R. at 75-84.) Williams classified Collins's past work as a cook as medium[2] and skilled. (R. at 77.) He classified Collins's past work as a sewing machine operator as light and unskilled. (R. at 77.) Williams was asked to consider an individual of Collins's age, education and work background, who had the residual functional capacity to perform light work that did not require her to climb, to perform repetitive fine manipulation with her hands and to lift items overhead, and who could occasionally perform other posturals, who would need to sit and stand through the day for brief intervals for postural changes and who would need good access to a bathroom to allow brief bathroom breaks. (R. at 77-78.) Williams testified that there would be a significant number of jobs available that such an individual could perform, including those of a hotel/motel housekeeper, a domestic house worker and a laundry labeler. (R. at 79-81.) Williams stated that the above -mentioned jobs would not be available if the hypothetical individual also could not perform gross manipulation. (R.

---

[2]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2009).

-4-

at 81.) He also stated that if the individual's bathroom breaks reached the level of becoming a job accommodation, there would be no jobs available. (R. at 82.) Williams was asked to consider the same hypothetical individual, but who could perform only sedentary,[3] unskilled work. (R. at 83.) He stated that there would be jobs available that such an individual could perform, including jobs as a teacher's aide, an addresser/office clerk and an order clerk. (R. at 83.)

In rendering his decision, the ALJ reviewed records from Lee Regional Medical Center; University of Virginia; Dr. Samuel D. Breeding, M.D.; Dr. Frank M. Johnson, M.D., a state agency physician; Richard J. Milan Jr., Ph.D., a state agency psychologist; Dr. Michael Hartman, M.D., a state agency physician; Julie Jennings, Ph.D., a state agency psychologist; Dr. David G. Sanford, M.D., an ophthalmologist; and Stone Mountain Health Services. Collins's attorney submitted additional medical records from Stone Mountain Health Services to the Appeals Council.[4]

On December 11, 2003, Collins was seen at Stone Mountain Health Services, ("Stone Mountain"), for complaints of urinary incontinence. (R. at 311-12.) Teresa Ellis, F.N.P., a family nurse practitioner, gave Collins a trial supply of Detrol. (R. at

---

[3]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2009).

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 6-10), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

311.) On January 8, 2004, Collins reported that Detrol "significantly" helped her symptoms of urinary frequency and incontinence. (R. at 309.) On April 6, 2004, Collins complained of intermittent low back pain. (R. at 308.) Ellis reported that Collins had full range of motion of the spine and mild tenderness in the right low back region. (R. at 308.) Straight leg raising tests were negative, and Collins's muscle strengths were normal and symmetrical bilaterally. (R. at 308.) Collins reported that she continued to get relief of her symptoms of urinary incontinence with Detrol. (R. at 307.) On April 14, 2005, Collins again reported that Detrol had helped her urinary incontinence. (R. at 297.) On May 13, 2005, Collins's test results were negative for rheumatoid arthritis. (R. at 293.) On July 15, 2005, Collins reported that her anxiety had improved since taking Lexapro. (R. at 286.) On August 19, 2005, she reported urinary urgency during the night. (R. at 283.) Collins returned on November 7, 2005, with no complaints of urinary incontinence. (R. at 279.)

On January 6, 2006, Collins reported that Cymbalta helped with her "nerves" and arthralgias. (R. at 276.) On August 17, 2006, Collins was diagnosed with hypertension, diabetes mellitus, hyperlipidemia and panic attacks. (R. at 260.) She was prescribed Valium. (R. at 260.) On October 31, 2006, Collins was diagnosed with migraine headaches, well-controlled hypertension and diabetes, hyperlipidemia and back pain. (R. at 257.) On May 3, 2007, Collins complained of bilateral knee pain, but she did not complain of urinary incontinence. (R. at 275.) Collins returned to Stone Mountain on June 4, July 5, and August 6, 2007, and made no complaints of urinary incontinence. (R. at 367, 369, 371-73.) On August 17, 2007, x-rays of Collins's lumbar spine showed osteophytes at the L4-L5 level. (R. at 365.) X-rays of her knees showed "very minimal degenerative" changes. (R. at 365.) That same day,

Lisa Deeds, F.N.P., a family nurse practitioner, reported that Collins's urine drug tests had been repeatedly negative for Valium, despite Collins's reports of taking the medication daily as prescribed. (R. at 364, 367.) Deeds advised Collins that she would not continue any controlled substances due to the abnormal results. (R. at 364.) On December 4, 2007, Collins complained of knee pain. (R. at 16.) Deeds reported that Collins had a "little puffiness" around both knees and in her finger joints. (R. at 16.) Deeds diagnosed arthritis. (R. at 16.) Collins rejected joint injections. (R. at 16.) On February 1, 2008, Deeds indicated that Collins had been treated for incontinence since 2005, which would cause her to go to the bathroom two to three times per hour. (R. at 20.)

On August 24, 2004, Collins underwent a nerve conduction study of her upper extremities at the University of Virginia. (R. at 201-02.) The study showed that Collins had mild bilateral carpal tunnel syndrome, which was slightly worse on the right. (R. at 202.)

On June 1, 2006, Dr. Samuel D. Breeding, M.D., examined Collins at the request of Disability Determination Services. (R. at 211-14.) Collins reported that she quit her job in February 2003 to home school her son. (R. at 214.) Dr. Breeding reported that Collins had normal range of motion of all major joints. (R. at 213.) She

had 4+/5 grip strength bilaterally. (R. at 213.) Tinel's sign[5] and Phalen's maneuver[6] were positive bilaterally. (R. at 213.) Collins had normal thumb and finger dexterity. (R. at 213.) X-rays of Collins's lumbar spine were normal. (R. at 215.) Chest x-rays showed no evidence of active pulmonary disease. (R. at 216.) Collins complained of "stress incontinence at times." (R. at 212.) Dr. Breeding diagnosed bilateral carpal tunnel syndrome, arthralgias with plantar fasciitis, chronic low back pain, diabetes mellitus, type II, history of chest pain, hypertension, controlled, and stress incontinence. (R. at 214.) Dr. Breeding opined that Collins could occasionally lift items weighing up to 25 pounds, that she could sit for a total of six hours in an eight-hour workday and that she could stand for two to four hours in an eight-hour workday, but should be allowed to sit or stand as needed for comfort. (R. at 214.) He opined that Collins may have difficulty with activities that required repetitive grouping or repetitive movement of her wrists. (R. at 214.)

On June 19, 2006, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Collins had the residual functional capacity to perform light work. (R. at 217-23.) Dr. Johnson indicated that Collins could frequently balance and occasionally climb, stoop, kneel, crouch and crawl. (R. at 219.) He found that Collins's ability to perform gross manipulation was limited. (R. at 219.) No visual or communicative limitations were noted. (R. at 219-20.) Dr. Johnson indicated that

---

[5]Tinel's sign is a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 1526 (27th ed. 1988.)

[6]Phalen's maneuver is a test for the detection of carpal tunnel syndrome. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 985 (28th ed. 1994.)

Collins should avoid working around hazards. (R. at 220.)

On July 6, 2006, Richard J. Milan Jr., Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Collins suffered from a nonsevere anxiety-related disorder. (R. at 224-36.) No functional limitations were noted. (R. at 234.) Milan also found that Collins had not experienced any episodes of decompensation. (R. at 234.)

On October 27, 2006, Dr. Michael Hartman, M.D., a state agency physician, indicated that Collins had the residual functional capacity to perform light work. (R. at 237-43.) Dr. Hartman indicated that Collins could frequently balance and occasionally climb, stoop, kneel, crouch and crawl. (R. at 239.) He found that Collins's ability to perform gross manipulation was limited. (R. at 239.) No visual or communicative limitations were noted. (R. at 239-40.) He found that Collins should avoid working around hazards. (R. at 240.)

On October 30, 2006, Julie Jennings, Ph.D., a state agency psychologist, completed a PRTF, indicating that Collins suffered from a nonsevere anxiety-related disorder. (R. at 244-56.) No functional limitations were noted. (R. at 254.) Jennings also found that Collins had not experienced any episodes of decompensation. (R. at 254.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims.

*See* 20 C.F.R. §§ 404.1520, 416.920 (2009); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2009).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2009); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated November 5, 2007, the ALJ denied Collins's claims. (R. at 25-37.) The ALJ determined that the medical evidence established that Collins suffered from severe impairments, namely obesity, diabetes mellitus, back and knee pain, mild carpal tunnel syndrome, high blood pressure, chest pain and overactive

bladder, but she found that Collins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 27, 30.) The ALJ found that Collins had the residual functional capacity to perform light work, limited by an inability to perform more than occasional balancing, stooping, kneeling, crouching and crawling, that allowed her to sit and stand for brief postural changes throughout the day, that allowed good access to a bathroom for a couple of very brief bathroom breaks during the day and which did not require climbing, the performance of repetitive fine manipulation with her hands or lifting items overhead. (R. at 31.) Thus, the ALJ found that Collins was unable to perform her past relevant work as a cook and a sewing machine operator. (R. at 35.) Based on Collins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Collins could perform. (R. at 35-36.) Thus, the ALJ found that Collins was not under a disability as defined under the Act, and was not eligible for benefits. (R. at 37.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Collins argues that the ALJ erred by finding that she could perform substantial gainful activity despite her incontinence. (Memorandum In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-11.) Collins does not challenge the ALJ's finding with regard to the effects of her remaining alleged impairments on her residual functional capacity.

The ALJ found that the medical evidence established that Collins suffered from severe impairments, namely obesity, diabetes mellitus, back and knee pain, mild

carpal tunnel syndrome, high blood pressure, chest pain and an overactive bladder, but she found that Collins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 27, 30.) Collins argues that she is disabled because the ALJ determined that she suffered from "severe overactive bladder." (Plaintiff's Brief at 10.) Based on my review of the record, I find this argument has no merit.

The record shows that Collins first complained of urinary incontinence in December 2003. (R. at 312.) On January 8, 2004, Collins reported that the medication Detrol "significantly" helped her symptoms of urinary frequency and incontinence. (R. at 309.) On April 6, 2004, Collins again reported that her symptoms of urinary incontinence were relieved with Detrol. (R. at 307.) On September 8, 2004, Ellis indicated that Collins should continue with Detrol. (R. at 303.) This is the last reference to Collins's overactive bladder from Stone Mountain. While Collins reported to Dr. Breeding on June 1, 2006, that she had stress incontinence at times, he did not place any limitations on her work-related abilities due to this complaint. (R. at 212, 214.) Dr. Johnson and Dr. Hartman found that Collins's daily activities were not significantly limited by her complained of symptoms, including her overactive bladder, and that she was capable of working. (R. at 222-23, 242-43.) I note that on February 1, 2008, Deeds indicated that Collins had been treated for incontinence since 2005, and that this impairment would cause her to go to the bathroom two to three times per hour. (R. at 20.) It is important to note, however, that the record does not contain any evidence that Deeds ever treated Collins for any complaints of incontinence. While the record shows that Collins has been treated for incontinence, it also shows that her symptoms were improved with medication. (R. at 307, 309.) "If

a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Furthermore, other than Deeds's February 1, 2008, letter, the record is void of any documentation to indicate that Collins would require a particular number of bathroom breaks. (R. at 20.)

For all of the above-stated reasons, I find that substantial evidence, in combination with the lack of any objective medical evidence to the contrary, exists to support the ALJ's finding with regard to Collins's residual functional capacity.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's finding that Collins had the residual functional capacity to perform a limited range of light work; and

2. Substantial evidence exists to support the Commissioner's finding that Collins was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Collins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the decision of the Commissioner denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2009):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: March 11, 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE